## UNITED STATES v. CHICKERING.
### No. 315.

District Court, D. New Hampshire.
April 22, 1939.

Frank Barber, of Brattleboro, Vt., for Chickering.

Alec Murchie, U. S. Atty., of Concord, N. H.

MORRIS, District Judge.

This is an action in equity of a civil nature brought by the United States of America against Arthur H. Chickering, Sr., of Walpole, New Hampshire, to establish the superiority of mortgage liens on fourteen cows in favor of the Resettlement Administration, an agency of the United States, over a mortgage lien held by the defendant purporting to cover the same fourteen cows, and to recover the value of said cows sold by the defendant. Upon trial the following facts appeared:

Early in the month of April, 1936, Charles H. Girard of Hopkinton, Rhode Island, accompanied by one Joseph Rose, visited the defendant's farm in Walpole for the purpose of purchasing cows to stock Girard's farm in said Hopkinton. Girard represented to the defendant that he had $1,000 with which to pay down on the purchase price and that he desired to purchase twenty cows. They went to the defendant's barn and Girard selected twenty-one cows out of the herd of one hundred. All of the cows so selected were marked with ear tags and were delivered by the defendant's trucks to Girard's farm in Rhode Island.

According to the terms of the sale $800 was to be paid down and the balance of the purchase price was to be secured by a personal mortgage. The defendant arranged with one Edward H. Sullivan, a Rhode Island attorney, to attend to the execution of the mortgage. Such mortgage was duly executed and recorded on April 9, 1936, in accordance with the laws of the State of Rhode Island. The mortgage covered the twenty-one cows designated by ear tags purchased of Chickering and "any and all cows which may hereafter come into my possession whether by way of substitution, replacement or addition to said herd hereinbefore described," and was

made to secure the payment of a certain promissory note for the sum of $1,667.50 in accordance with its tenor with interest at six per cent per annum said principal sum to be paid in monthly installments of one hundred dollars commencing in May, 1936, interest to be computed on unpaid balance. In May, 1936, Girard returned to Walpole and purchased four cows from the defendant for $450. On June 29, 1936, he purchased three more for the sum of $300. These were added to his herd in Hopkinton. With the purchase of these last seven cows it brought the total indebtedness due the defendant up to $2,381.93, with credits of $351, leaving a balance due of $2,030.93.

Joseph Rose was a well known cattle dealer living in Rhode Island and had on many occasions introduced customers to farmers and especially to the defendant who lived in New Hampshire. He learned that Girard wanted to purchase some cows and agreed to help him. He accompanied Girard to the office of Daniel G. Aldrich, who was at that time state agent of the Resettlement Administration in Rhode Island. Girard made an application for a loan to be used for the purchase of stock and general farm expenses. This was on March 19, 1936. Later, the loan was approved and Girard received the sum of $955. He agreed with Aldrich to give the Government security on eight cows, farm machinery, etc. Eight hundred dollars of the money so loaned by the Government was paid to Chickering in part payment for the twenty-one cows. The mortgage is dated April 13, 1936, and the eight cows described in the mortgage were selected from the twenty-one cows purchased from and already mortgaged to Chickering. The mortgage was recorded on the 13th day of April the same day it was executed.

On April 14, 1936, Rose gave Girard a receipt for $800 worded as follows: "Received of Charles H. Girard $800 in full payment of 8 cows. Received payment. Arthur Chickering.Sr. per Jos Rose. Agent."

The plaintiff claims that Rose was Chickering's agent authorized to give the receipt in full discharge of the amount due for the eight cows and that they were thereby discharged from the Chickering mortgage. I cannot so find.

Rose's only connection with the sale of the twenty-one cows was the fact that he had for sometime had an understanding with Chickering that he would receive $5 a head for every cow that Chickering sold to persons whom he introduced. He was paid by Chickering $105 on the day that the sale was made. He was not supposed to have any further connection with the transaction. However, Girard delivered to him the check for $800 and obtained the receipt above mentioned. This check, Rose left on his desk. Some days later he saw Chickering, who asked him about the check. Rose admitted that he had the check and forgot to bring it with him and he gave Chickering his personal check for the sum of $800 and Chickering authorized him to cash the check given to him by Girard, which he did.

Chickering was not informed of the receipt above mentioned given by Rose; he knew nothing of its purport and never authorized the same. In fact the $800 did not pay the purchase price of the eight cows which was $117 each. Chickering denied Rose's authority to give any receipt and Rose admitted he was never so authorized.

I find as a fact that Rose was not Chickering's authorized agent to accept payment in full for the eight cows and to release the same from the Chickering mortgage.

Later, in November or December, 1936, Girard made an application to the Resettlement Administration for an additional loan to be used for the purchase of six cows from Garelick Brothers of Franklin, Mass., for $720. The application was granted and the money so received was paid to Garelick Brothers for the cows. A second mortgage bearing date of February 1, 1937, was given to the Resettlement Administration to secure the additional loan. This mortgage was made to cover not only the six cows purchased of Garelick Brothers but the eight cows purchased of Chickering. The mortgage was given as security for the payment of a promissory note for $1,675, which included the $955 amount of the first loan. While the mortgage purports to be given February 1, 1937, in reality it was not executed and recorded until March 18, 1937.

The six cows purchased of Garelick Brothers were delivered to Girard and became a part of his herd.

Girard failed to meet his payments on the Chickering note in accordance with its terms. Thereupon Chickering sent his note and mortgage to Attorney Sullivan to be foreclosed. Sullivan, accompanied by a

380

sheriff, seized Girard's entire herd of cows with one exception, and drove them to a neighboring farm, advertising them for sale as required by the law of Rhode Island on March 20, 1937. At the request of Girard the sale was postponed to March 27, 1937, when all of his cows except one were sold at public auction including the fourteen cows on which the plaintiff claims superior equitable liens.

The thirty-three cows which were sold at the auction sale included what was left of the twenty-one cows originally purchased, the seven cows subsequently purchased of Chickering and the six cows purchased from Garelick Brothers.

 The auctioneer's return shows the sale price of each cow identified by the ear tag. The six cows purchased from Garelick Brothers brought $333.50. As the auction sale was advertised in accordance with the laws of Rhode Island and was well attended by prospective bidders I find that the sale fairly establishes the market value of the cows sold.

I rule that the twenty-one cows originally purchased and the seven cows subsequently purchased were covered by the Chickering mortgage dated April 9, 1936, and that they were legally seized and sold at the foreclosure sale.

I rule that Rose was not Chickering's agent authorized to accept $800 in payment of eight cows selected from the twenty-one and to release them from the Chickering mortgage.

I rule that the plaintiff has failed to establish any superiority of its mortgage lien over that of Chickering with reference to the eight cows above mentioned.

With respect to the six Garelick cows the plaintiff's equitable rights are superior to those of Chickering because of the fact that the money obtained on the second loan from the plaintiff was used to pay the purchase price of the Garelick cows.

I hold that a mortgage given for the purchase price of property simultaneously with the delivery of the property is entitled to the highest consideration of a court of equity and takes precedence of all other existing and subsequent claims and liens of every kind against the mortgagor, to the extent of the property sold, thus outranking a mortgage previously given by the same mortgagor, before he took title to the property, but expressed to cover after-acquired property.

The defendant contends that because the plaintiff's mortgage was not properly executed and recorded within five days after the purchase of the Garelick cows, plaintiff lost its lien and that the cows were liable to be seized and sold under the defendant's mortgage of April 13, 1936. But the evidence establishes that the plaintiff's second mortgage was in fact given for the purchase price and the failure to execute and record the same was due to illness.

I hold that such failure does not preclude the plaintiff from claiming its superior equitable rights under the principle of law above stated.

The plaintiff is entitled to a decree against the defendant in the sum of $333.-50.